```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

RIMAC INTERNACIONAL CIA. DE SEGUROS
Y REASEGUROS, S.A.,

                          Plaintiff,         08 Civ. 3915

     -against-

EXEL GLOBAL LOGISTICS, INC., CIELOS DEL       OPINION
PERU S.A., GALAXY AVIATION CARGO INC.,
CHECKMATE PRIORITY EXPRESS, INC., and
CONTINENTAL FREIGHTWAYS, INC., d/b/a
Fineline Trucking,

                          Defendants.

------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/29/09

A P P E A R A N C E S:

Attorneys for Plaintiff

PURRINGTON & MCCONNELL
82 Wall Street, Suite 1110
New York, NY  10005
By:  John H. McConnell, Esq.

Attorneys for Defendant
Exel Global Logistics, Inc.

DUANE MORRIS, LLP
744 Broad Street, Suite 1200
Newark, NJ  07102-3889
By:  James W. Carbin, Esq.

DUANE MORRIS, LLP
470 Atlantic Avenue, Suite 500
Boston, MA  02210
By:  Alissa M. Christie, Esq.

```
Attorneys for Defendants
Cielos Del Peru S.A.,
Galaxy Aviation Cargo Inc., and
Checkmate Priority Express, Inc.

KAPLAN, VON OHLEN & MASSAMILLO, LLC
555 Fifth Avenue, 15th Floor
New York, NY  10017
By:  Nicholas E. Pantelopoulos, Esq.


Attorneys for Defendant
Continental Freightways, Inc.

SCHINDEL, FARMAN, LIPSIUS, GARDNER &
  RABINOVICH, LLP
14 Penn Plaza, Suite 500
New York, NY  10122
By:  Glenn R. Kramer, Esq.
     Jean M. Gardner, Esq.
```

**Sweet, D.J.**

The defendant, Exel Global Logistics, Inc. ("Exel") has moved pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss the complaint of plaintiff, Rimac Internacional Cia De Seguros Y Reaseguros, S.A. a/s/p Telefonica Moviles, S.A. ("Telefonica"), against Exel based upon the arbitration clause in the service contract entered into between Exel Global Logistics Sucursal Del Peru S.A. ("Exel Peru") and Telefonica, dated January 1, 2004, and renewed on January 16, 2006 (the "Contract"). In the alternative, Exel seeks an order staying this action.

Defendant Continental Freightways, Inc. s/h/a Continental Freightways, Inc. d/b/a Fineline Trucking ("Continental") has also moved to dismiss, or, in the alternative, to transfer this action on the grounds of forum non conveniens and 28 U.S.C. § 1404(a).

Upon the facts and conclusions set forth below, the motion of Exel is granted, and this action is stayed. The motion of Continental is denied with leave

1

to renew in the event that the arbitration or settlement does not resolve the claims of the parties.

### I. BACKGROUND

On April 25, 2008, Telefonica filed its complaint (the "Complaint") against Exel, Cielos del Peru, S.A. ("Cielos"), Galaxy Aviation Cargo, Inc. ("Galaxy"), Checkmate Priority Express, Inc. ("Checkmate"), and Continental.  The Complaint seeks damages in the amount of $804,153.34 for the subrogated loss of approximately 15,000 Nokia cell phones which were hijacked in Fort Pierce, Florida, on or about April 28, 2006.

At the time of the loss, the cell phones were being shipped by land from Irving, Texas, to Miami, Florida, for further transport by air to Lima, Peru.  Continental, a Florida corporation with its principal place of business in Florida, worked with Checkmate to facilitate the transport of the cargo.  Continental does not maintain an office or telephone listing in New York and has no

personnel, agents, bank accounts, or real or personal property in New York.

The freightliner tractor was eventually recovered in Hialeah, Florida, and the utility trailer recovered in Miami, Florida.

The Complaint alleges that "[a]t the time of this loss, plaintiff's subrogor Telefonica had a contract with defendant Exel's Peruvian counterpart, Exel Global Logistics Sucursal del Peru S.A. (hereinafter "Exel Peru"), for the integrated transportation and customs clearance and delivery of all of its' [sic] international cargo." Declaration of James W. Carbin, Esq. ("Carbin Decl."), Exh. A; Complaint ¶ 13.

The Contract between Telefonica and Exel Peru, referenced in Telefonica's Complaint, contains an "Arbitration Clause." The clause provides:

> Any dispute arising from the interpretation or execution hereof shall be solved directly by the parties for which they agree to make their best efforts to solve their controversies based on their bona fide principles, pursuant to the intention stated in this agreement. If despite this fact there should be any

3

> controversy, it shall be submitted to the unappealable award of an arbitration court composed of three members, two arbitrators shall be appointed by the parties and these two arbitrators shall appoint an umpire who shall chair the court. If no agreement is reached regarding the appointment of the umpire or if any party shall [not] appoint its own arbitrator within 10 working days after this request, the corresponding appointment shall be made upon request of the parties by the National and International Arbitration and Conciliation Center of the Lima Chamber of Commerce. The proceeding shall take place in Lima subject to the Arbitration Regulations of the National and International Arbitration and Conciliation Center of the Lima Chamber of Commerce, which shall not exceed 60 days from the arbitration court settlement, being the arbitrators able to extend this term for any justified reason. This arbitration proceeding shall take place according to law.

Id., Exh. B. Clause 13.

Telefonica has also filed a complaint in Peru against DHL Global Forwarding Peru S.A. ("DHL"), Exel's successor company and assignee to the Contract, for the same 15,000 Nokia cell phones loss, claiming the same entitlement to damages in the amount of $804,153.34. The assignment to DHL occurred on or about April 1, 2006, when Exel Peru transferred all of its rights and obligations by contractual assignment to DHL. The Peruvian Court has ordered that claim to arbitration.

4

The instant motions were heard and marked fully submitted on November 6, 2008.

II.  **THE MOTION TO STAY IS GRANTED**

The Federal Arbitration Act ("FAA") provides for the "judicial enforcement of privately made agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). Pursuant to section 2 of the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 2 represents "a congressional declaration of a liberal federal policy favoring arbitration agreements . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); see also Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) ("There is a strong federal

5

policy favoring arbitration as an alternative means of dispute resolution."). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25.

In the case of international transactions, the "bias in favor of arbitration[] is even stronger." Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., Ltd., 189 F.3d 289, 294 (2d Cir. 1999) (internal quotations and citation omitted); see also David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd., 923 F.2d 245, 248 (2d Cir. 1991) ("Enforcement of international arbitral agreements promotes the smooth flow of international transactions by removing the threats and uncertainty of time-consuming and expensive litigation.").

Further, the Inter-American Convention on International Commercial Arbitration, to which both

the United States and Peru are signatories, provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."  9 U.S.C. § 303(a).

To determine whether a particular dispute is arbitrable, courts in this Circuit must first determine "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of [that] agreement encompasses the claims at issue." Bank Julius Baer & Co., Ltd. v. Waxfield, Ltd., 424 F.3d 278, 281 (2d Cir. 2005) (internal quotations and citation omitted) (alteration in original).  If the parties did agree to arbitrate, a three-part inquiry applies to determine whether the dispute falls within the scope of the arbitration clause. First, "a court should classify the particular clause as either broad or narrow."  Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001).  If the clause is narrow, "the court must determine whether the dispute is over an issue that is on its face within

7

the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." Id. (internal quotations and citation omitted). Where, however, "the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." Id. (internal quotations and citation omitted).

Here, the parties to the Contract, Telefonica and Exel Peru, expressly agreed to arbitrate "[a]ny dispute arising from the interpretation or execution" of the Contract "in Lima [Peru] subject to the Arbitration Regulations of the National and International Arbitration and Conciliation Center of the Lima Chamber of Commerce." The arbitration clause is therefore classified as broad because "the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause," id. at 225, and the presumption of arbitrability arises and

8

attaches even to collateral matters implicating "issues of contract construction or the parties' rights and obligations under it." Id. at 224 (internal quotations and citation omitted.

Through this action, Telefonica seeks to hold defendants liable on the Contract, which was executed between Telefonica and Exel Peru and governed these entities' relationship with respect to the transportation and delivery of Telefonica's cargo. Telefonica alleges that Exel failed to deliver the cargo. Thus, as the claims against Exel involve disputes arising from the interpretation and/or execution of the Contract, this matter should proceed through nonappealable arbitration in Lima, Peru, as intended by the parties.

Indeed, Telefonica itself has asked the Court to "accept the Carbin Declaration and Motion as an application for a stay as to it, pending the Peruvian arbitration." Pl. Mem. of Law in Opp. at 5. Therefore, in view of the applicability of the arbitration agreement to this dispute, the on-going arbitration proceedings in Peru, and the parties' apparent agreement

9

over the validity of those proceedings, this action will be stayed. In the event that the arbitration is concluded or a settlement reached, this action will remain, if necessary, to enforce any award or settlement.

### III. CONTINENTAL'S MOTION TO DISMISS OR TRANSFER IS DENIED

According to Continental, this action should be dismissed or, in the alternative, transferred to the Southern District of Florida on the grounds of <u>forum non conveniens</u>.

"[F]orum non conveniens is a discretionary device permitting a court in rare instances to 'dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim.'" <u>Wiwa v. Royal Dutch Petroleum Co.</u>, 226 F.3d 88, 100 (2d Cir. 2000) (quoting <u>PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.</u>, 138 F.3d 65, 73 (2d Cir. 1998)). The common-law doctrine "has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best."

10

Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007) (internal quotations and citation omitted) (alteration in original).

In order to determine whether dismissal is appropriate, "the 'first level of inquiry' in a forum non conveniens analysis is to determine what deference is owed a plaintiff's choice of forum." DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 28 (2d Cir. 2002) (quoting Iragorri v. United Techs. Corp., 274 F.3d 65, 73 (2d Cir. 2001). In so doing, "a court should begin with the assumption that a plaintiff's choice of forum will stand unless the defendant can demonstrate that reasons exist to afford it less deference." Id. The next step "is to determine if an adequate alternative forum exists. If so, courts must then balance a series of factors involving the private interests of the parties in maintaining the litigation in the competing fora and any public interests at stake." Wiwa, 226 F.3d at 100 (internal citations omitted). "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Pollux Holding

11

Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003).

Once the court determines that an adequate alternative forum exists, the factors set forth in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947) apply. The private interest factors include,

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Iragorri, 274 F.3d at 73–74 (quoting Gulf Oil, 330 U.S. at 508). The public interest factors include the following:

> (1) administrative difficulties resulting from court congestion; (2) the unfair imposition of jury duty on citizens of a community which has no relation to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the avoidance of unnecessary problems in conflicts of law.

Cyberscan Tech., Inc. v. Sema Ltd., No. 06 Civ. 526 (GEL), 2006 WL 3690651, at *12 (S.D.N.Y. Dec. 13, 2006) (citation omitted).

According to Continental, Telefonica is a citizen of Peru, and therefore a foreign plaintiff whose choice of forum in the U.S. is entitled to less deference. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (1981) ("Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."). Even applying a minimal level of deference to Telefonica's choice of forum, however, Continental has failed to demonstrate that this is one of the "rare circumstances" where forum non conveniens should be applied to dismiss an action where the alternative forum is domestic, rather than foreign. Sinochem, 549 U.S. at 430.

Here, Continental has proposed the United States District Court in the Southern District of Florida as an alternate forum. Because Continental, a Florida corporation, is subject to service of process in the Southern District of Florida and the loss of cargo in Florida is worth over $75,000, the Southern District of Florida is an adequate alternative forum for the adjudication of the present dispute between Telefonica

13

and Continental.  Despite its contention, however, that none of the relevant facts or parties are located in the Southern District of New York, Continental has not met its burden of establishing that the private and public factors "strongly" favor dismissal to the extent that they justify disturbing Telefonica's choice of forum and forcing it to re-file this action in the Southern District of Florida.  DiRienzo, 294 F.3d at 30-31; see Iragorri, 274 F.3d at 71 ("[A] court reviewing a motion to dismiss for forum non conveniens should begin with the assumption that the plaintiff's choice of forum will stand unless the defendant meets [its] burden . . . .").  In the absence of more compelling arguments, the fact that neither party is located in New York and that the stolen shipment never entered this District is insufficient to establish the "oppressiveness" and "vexation" required to warrant dismissal on forum non conveniens grounds.  See Piper Aircraft, 454 U.S. at 241 (citation omitted).  As Telefonica points out, given the detailed police and investigative reports that have already been produced, it is likely that no witness testimony will be required with respect to the circumstances surrounding the hijacking in Florida.  Indeed, at this stage in the dispute and in light of the

14

stay imposed above, it is in the public interest for this action to remain in this District rather than burdening the parties and the Florida courts with the filing of a new suit in the Southern District of Florida.

Continental has also moved for a transfer of this action pursuant to 28 U.S.C. § 1404(a). That section provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); see Sinochem, 549 U.S. at 430 ("Congress has codified the doctrine [of forum non conveniens] and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action."). Here too Continental has the burden of showing that transfer is warranted, see D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006), and a "plaintiff's choice of forum should not be disturbed unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice." Saccoccio v. Relin, Golstein & Crane, LLP, No. 06 Civ. 14351 (DLC),

15

2007 WL 1334970, at *1 (S.D.N.Y. May 7, 2007) (internal quotations and citation omitted).

In determining whether transfer under § 1404 is appropriate, courts consider the following:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

D.H. Blair, 462 F.3d at 106-07 (citation omitted) (alteration in original). For the same reasons discussed above, Continental has failed to make such a showing, and therefore its motion is denied. However, in the event that either the arbitration or the settlement leaves issues to be tried, leave is granted to Continental to move to dissolve the stay and to renew its motion to transfer.

**CONCLUSION**

The motion of Exel for a stay is granted, the motion of Continental to dismiss or transfer is denied at this time.

It is so ordered.

New York, N.Y.
June 24, 2009

_____
ROBERT W. SWEET
U.S.D.J.